UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>JEFFREY K. WOODS, et al.,<br><br>                    Defendants. | CASE NO. C11-5976BHS<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs and Counter Defendants US Bank National Association as Trustee for Citigroup Mortage Loan Trust, Inc. 2007-AHL1, Asset-Backed Pass-Through Certificates Series 2007-AHL1 ("US Bank") and America's Servicing Company a/k/a Wells Fargo Home Mortgage a/k/a ASC's ("Wells Fargo") (collectively "Lenders") motion for summary judgment of Defendants and Counter Claimants Jeffrey K. Woods and Emily P. Woods's ("Emily Woods") (collectively "Borrowers") counterclaims. Dkt. 24. The Court has considered the pleadings filed in

ORDER - 1

support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 16, 2011, Lenders filed a complaint for unlawful detainer against Borrowers in Kitsap County Superior Court. Dkt. 7 at 7-11. On November 29, 2011, Borrowers removed the action to this Court (Dkt. 1) and filed an answer to the complaint, alleging the following counterclaims against Lenders: (1) breach of the Deed of Trust Act; (2) breach of third party contract; (3) breach of contract; (4) equitable estoppel; (5) violation of the Washington Consumer Protection Act; (6) promissory estoppel; and (7) quiet title (Dkt. 2 at 11-18).

On March 9, 2012, Lenders filed a motion for summary judgment seeking dismissal of all of Borrowers' counterclaims alleged against them. Dkt. 24. On March 15, 2012, Northwest Trustee Services, Inc. ("NWTS") filed a motion joining Lenders' motion for summary judgment. Dkt. 28.[1] On April 19, 2012, Borrowers filed an untimely response to the motion for summary judgment (Dkt. 30) and on April 20, 2012, Lenders replied (Dkt. 31). On April 20, 2012, Borrowers filed a motion for relief from deadline asking the Court to consider their response to the motion for summary judgment despite the fact that the response was filed three days late. Dkt. 32. The Court notes that Borrowers' motion for relief from deadline is granted to the extent that the Court has considered their untimely response in deciding Lenders' motion for summary judgment.

---

[1] The Court includes NWTS when referring to "Lenders."

## II. FACTUAL BACKGROUND

This is an action arising out of a foreclosure and sale by Lenders of property located at 4363 Southeast Nelson Road, Olalla, WA 98359, formerly owned and currently occupied by Borrowers. *See* Dkts. 26 & 30-1.

On August 31, 2006, Borrowers took out a loan from Accredited Home Lenders, Inc. ("Accredited") in the amount of $460,700.00, which was secured by a Deed of Trust ("DOT") against the property. On July 31, 2008, NWTS mailed a notice of default to the property address and on August 1, 2008, posted a copy of the notice of default at the property. Dkt. 26-1 at 22-24, 30-32, & 34. Borrowers maintain that they never received a copy of the notice of default. Dkt. 30-1 at 2.

Foreclosure proceedings were initiated on the property in October of 2008, but were ultimately discontinued. Dkt. 26-1 at 99 & 101. On April 22, 2010, NWTS recorded a notice of sale, scheduling the foreclosure sale of the property for July 23, 2010 (*id*. at 112), mailed the notice of sale via first class mail and certified mail–return receipt requested (*id*. at 103-110) and posted the notice of sale at the property (*id*. at 117). Borrowers maintain that they never received the April 22, 2010, notice of sale. Dkt. 30-1 at 2.

The trustee's sale was postponed three times and each time it was postponed, a notice of the postponement was mailed to Borrowers at the property address. Dkt. 26-1 at 127-29, 133-35, & 140-41. Borrowers maintain that they never received the notices of postponement. Dkt. 30-1 at 2.

On November 19, 2010, US Bank purchased the property at the trustee's sale for $400,000 and the Trustee's Deed was recorded on December 1, 2010. Dkt. 26-1 at 143-44.

## III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must

1  meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

2  U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual

3  issues of controversy in favor of the nonmoving party only when the facts specifically

4  attested by that party contradict facts specifically attested by the moving party.  The

5  nonmoving party may not merely state that it will discredit the moving party's evidence

6  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

7  *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

8  nonspecific statements in affidavits are not sufficient, and missing facts will not be

9  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

10 **B.    Lenders' Motion for Summary Judgment**

11         Lenders' motion seeks summary judgment of Borrowers' counterclaims based on

12 the application of the waiver doctrine and, to the extent the waiver doctrine does not

13 apply, that Borrowers' counterclaims fail as a matter of law.  Dkt. 24.

14         **1.    The Role of MERS**

15         As an initial matter, the Court concludes that it will not stay this case, or continue

16 Borrowers' motion, based on the certification of questions to the Washington Supreme

17 Court by a court in this district regarding the role of MERS in the foreclosure process as

18 MERS is not a party to this action.  Accordingly, to the extent Borrowers are making a

19 motion for such a stay or continuance, the motion is denied.

20         **2.    The Waiver Doctrine**

21         The Washington Supreme Court's overview of the Deed of Trust Act and adoption

22 of the waiver doctrine is instructive:

Three goals of the Washington deed of trust act are: (1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles. *Cox v. Helenius*, 103 Wash.2d 383, 387 (1985); *Country Express Stores, Inc. v. Sims*, 87 Wn. App. 741, 747-48 (1997); Joseph L. Hoffmann, Comment, Court Actions Contesting The Nonjudicial Foreclosure of Deeds of Trust in Washington, 59 Wash. L.Rev.. 323, 330 (1984). The act includes a specific procedure for stopping a trustee's sale so that an action contesting default can take place. RCW 61.24.130(1) provides that junior lien holders may move "to restrain" a trustee's sale "on any proper ground." However, a court cannot grant a "restraining order or injunction to restrain a trustee's sale" unless the person seeking the order has provided five days' notice to the trustee of the attempt to seek the order and has paid amounts due on the obligation secured by the deed of trust. RCW 61.24.130(1), (2). This statutory procedure is "the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure." *Cox*, 103 Wash.2d at 388. Under RCW 61.24.040, and the form it mandates for a notice of trustee's sale, recipients are advised that "[a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale. RCW 61.24.040(1)(f)(IX)." This statute also includes the form for the notice of foreclosure. That form must explain the right to contest the default by bringing a court action and must advise that a court may grant a restraining order or injunction to restrain a trustee's sale if the five days' notice and payment requirements are satisfied. RCW 61.24.040(2).

\* \* \*

The failure to take advantage of the presale remedies under the deed of trust act may result in waiver of the right to object to the sale, as RCW 61.24.040(1)(f)(IX) provides. The Court of Appeals has found waiver in a number of cases involving failure to enjoin the trustee's sale. Specifically, that court has held that waiver of any postsale contest occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale. *Country Express Stores, Inc*., 87 Wn.App. at 749-51; *Steward v. Good*, 51 Wn. App. 509, 515-17 (1988); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 114 (1988); *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, (1971); *see* Hoffmann, 59 Wash. L.Rev. at 335. The waiver doctrine

> applied in this context serves all three goals of the deed of trust act. Adequate remedies to prevent wrongful foreclosure exist in the presale remedies, and finding waiver in these circumstances furthers the goals of providing an efficient and inexpensive foreclosure process and promoting the stability of land titles. *Country Express Stores, Inc.*, 87 Wn. App. at 752; *see Ostrander*, 6 Wn. App. at 32 ("[t]o allow one to delay asserting a defense [until after the sale] would be to defeat the spirit and intent of the trust deed act").
>
> * * *
>
> The waiver doctrine is also consistent with the scheme of the act itself: "The Deed of Trust Act discourages the use of postsale remedies in three ways. First, the Act does not expressly provide for any court actions to contest a completed trustee's sale. Second, the Act indicates that the right to contest a completed sale may be waived by a party's failure to bring a presale injunction action. Finally, the Act requires that the trustee's deed issued to the purchaser "recite the facts showing that the sale was conducted in compliance with all of the requirements" of the Act and the particular deed of trust. This recital of statutory compliance is "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value." [RCW 61.24.040(7).]" Hoffmann, 59 Wash. L.Rev.. at 329 (footnotes omitted).
>
> We agree that the waiver rule applied by the Court of Appeals in *Country Express Stores*, *Steward*, *Koegel* and like cases appropriately effectuates the statutory directive that any objection to the trustee's sale is waived where presale remedies are not pursued. See RCW 61.24.040(1)(f)(IX).

*Plein v. Lackey*, 149 Wn. 2d 214, 225-29 (2003) (footnotes omitted). However, under RCW § 61.24.127(1)(a)-(c), claims for fraud, violations of the Consumer Protection Act, and failure by the trustee to materially comply with the DTA are preserved even after the foreclosure sale has occurred. However, the statute specifically states that a borrower bringing post-sale claims, "may not seek any remedy at law or in equity other than monetary damages;" and "may not operate in any way to encumber or cloud the title to the property that was subject to the foreclosure sale . . . ." RCW § 61.24.127(b), (e).

ORDER - 7

Here, in their motion for summary judgment, Lenders argue that Borrowers' claims for breach of the Deed of Trust Act, breach of third party contract, breach of contract, equitable estoppel, promissory estoppel, and quiet title should be dismissed with prejudice under the waiver doctrine as Borrowers brought these claims after the foreclosure sale took place. Dkt. 24. Borrowers maintain that waiver does not apply because they have demonstrated that "they never received notice of trustee sale informing them of their right to enjoin sale pursuant to RCW [§] 64.24 et seq." Dkt. 30 at 13.

In order for the waiver doctrine to apply, the borrower must have: "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 163 (2008) (citing *Plein*, 149 Wn. 2d at 227-29). In her declaration[2], Emily Woods states that "I did not receive the Notice of Default as required under RCW [§] 61.24.030." Dkt. 30-1 at 2. In addition, she declares:

> The Trustee states that on April 22, 2010 the sale was restated, again I did not receive this notice. The Trustee also states that excessive postponements occurred between July 31, 2008 until the actual sale on November 19, 2010.
> I have reviewed my records and I did not receive the second notice alleged by NTSI of April 22, 20[10] Notice of Default or the signed declaration of foreclosure loss mitigation as required by law.

---

[2] The Court notes that while the declaration of Emily Woods is also signed by Jeffrey Woods, the facts contained in the declaration were only sworn to by Emily Woods and therefore are only considered to be her testimony and not that of Jeffrey Woods.

ORDER - 8

*Id*. Lenders maintain that they followed all proper procedures under the DTA regarding the foreclosure process and filed sworn declarations showing the mailing, posting, publication, and proclamation of such notices. Dkt. 31; *see* Dkt. 26. In addition, Lenders filed proof that the April 22, 2010 notice of sale was recorded with the Kitsap County Auditor (Dkt. 26-1 at 144) giving Borrowers, at the very least, constructive notice. Dkt. 31.

The Court concludes that Emily Woods's self-serving statements in her declaration that she "reviewed her records" and "did not receive the notice" is insufficient to defeat Lenders' motion where Lenders have submitted evidence to show that they complied with all notice requirements under the DTA. Thus, Lenders have shown that the three elements of the waiver doctrine have been met: (1) Borrowers received notice of the right to enjoin the sale as Lenders provided evidence that the proper notices were mailed, posted, published and recorded; (2) Borrowers had actual or constructive knowledge of a defense to foreclosure prior to the sale as there are no claims based on events that occurred after the sale; and (3) it is undisputed that Borrowers failed to bring an action to obtain a court order enjoining the sale. Accordingly, the Court concludes that Lenders have shown that the waiver doctrine applies and Borrowers' claims for breach of the Deed of Trust Act, breach of third party contract, breach of contract, equitable estoppel, promissory estoppel, and quiet title must be dismissed. Although the Court views Borrowers' allegations regarding their DTA claims to allege non-material violations, in an abundance of caution, the Court will analyze such claims separately and

apart from the waiver doctrine in the event Borrowers were attempting to assert DTA claims involving material violations.

3. **Borrowers' DTA Claims**

Borrowers' counterclaims allege that Lenders violated the DTA in the following ways:

> (A) The strict statutory prescription of the chain of ownership of [Borrowers'] loan and who can foreclose, see paragraphs 14, 15, and 17 through 45.
> (B) There is the existence of actual conflict of interest if the trustee representative (Northwest Trustee Services, Inc.) Vonnie McElliott is the Vice President of MERS and the Trustee simultaneously.
> (C) Violation of Deed of Trust Act RCW 61.24.030(7)(a) and RCW 61.24.030(8).

Dkt. 2 at 12-13. Lenders maintain that Borrowers' DTA claims fail as a matter of law.

  a. **Chain of Ownership and Conflict of Interest Issues**

Borrowers' first two allegations regarding the chain of ownership and conflict of interest are related. First, as Lenders point out in their motion for summary judgment, any allegations of violation of the DTA that rely on a "show me the note" argument are without merit. *See Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276 at *6 (W.D. Wash. Mar. 24, 2010) (quoting *Diessner v. Mortgage Electronic Registration Sys.*, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) (collecting cases)). However, Borrowers state in their response to the motion for summary judgment that they are not relying on a "show me the note" argument; rather, they allege that Vonnie McElliott is an employee of NWTS and was "not employed as Vice President of Mortgage Electronic Registrations Systems, Inc." and therefore did not have the authority to transfer the note when she

signed the Assignment of Deed of Trust to US Bank on August 1, 2008. Dkt. 30 at 5. In addition, their argument appears to be that if McElliott was in fact a vice president of MERS then there is a conflict of interest issue with her position as a vice president of NWTS, the accredited DOT trustee. *See id*. at 4-5. In support of their motion for summary judgment, Lenders have submitted evidence that an assignment of deed of trust to US Bank was signed by McElliott on August 1, 2008, as a Vice President of MERS and recorded on August 26, 2008. In addition, Lenders point out that while the DTA states that "[n]o person, corporation or association may be both trustee and beneficiary under the same deed of trust" (RCW § 61.24.020), Washington case law allows "an employee, agent or subsidiary of a beneficiary to also be a trustee." *Cox v. Helenius*, 103 Wn.2d 383, 390 (1985). While Borrowers have made statements in their response to the motion alleging conflict of interest issues and questions regarding McElliot's position with MERS, Borrowers have failed to submit any evidence, or point the Court to any authority, to support their allegations and refute the evidence submitted by Lenders. Accordingly, Borrowers' claims under the DTA regarding "chain of ownership" and conflict of interest must be denied.

    **b.**  **RCW §§ 61.24.030(7)(a) & 61.24.030(8)**

Borrowers' remaining claims under the DTA allege violations of RCW § 61.24.030(7)(a)&(8). RCW § 61.24.030(7)(a) requires that

> for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or

ORDER - 11

      other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

Lenders have submitted evidence to show that NWTS is in possession of a declaration signed by Wells Fargo as "attorney in fact" for U.S. Bank. Dkt. 26-1 at 97. Borrowers have failed to submit any evidence to show how Lenders have failed to show sufficient proof that the beneficiary is the owner of the promissory note secured by the deed of trust. Accordingly, Borrowers' claim brought under RCW § 61.24.030(7)(a) is without merit.

      In addition, RCW § 61.24.030(8) provides, in relevant part, that

      at least thirty days before notice of sale shall be recorded, transmitted or served, written notice of default shall be transmitted by the beneficiary or trustee to the borrower and grantor at their last known addresses by both first-class and either registered or certified mail, return receipt requested, and the beneficiary or trustee shall cause to be posted in a conspicuous place on the premises, a copy of the notice, or personally served on the borrower and grantor.

Here, Borrowers appear to argue that either they never received the notice of default, dated July 31, 2008, from Lenders or that such notice of default "expired" because of the multiple notices of sale that were transmitted and then postponed. *See* Dkt. 30. First, the Court concludes that, to the extent Borrowers are arguing that the notice of default somehow expired, they fail to cite case or statutory authority on which they rely in making the argument and the Court is unaware of any. In addition, as discussed above, Borrowers have failed to submit any evidence, with the exception of the self-serving statement in Emily Woods's declaration that she did not receive the proper notices, that Lenders failed to comply with any requirements regarding the notices given to

1 Borrowers. Lenders have submitted evidence that the notice of default dated July 31,
2 2008 (Dkt. 26-1 at 22-24) was mailed to Borrowers at the property address via first class
3 mail and certified mail–return receipt requested on July 31, 2008 (*see* Dkt. 26-1 at 30-
4 32). Also, Lenders have submitted evidence that NWTS posted a copy of the notice of
5 default at the property on August 1, 2008. Dkt. 26-1 at 34. Accordingly, the Court
6 concludes that Borrowers have failed to submit sufficient evidence to create a material
7 question of fact regarding Lenders' compliance with the notice requirements under the
8 DTA, and Borrowers' claim under RCW § 61.24.030(8) fails as a matter of law.

9    **4.  Borrowers' CPA Claim**

10    To prevail on a CPA claim, a plaintiff must show: (1) an unfair or deceptive act or
11 practice; (2) that occurs in trade or commerce; (3) a public interest; (4) injury in their
12 business or property; and (5) a causal link between the unfair or deceptive act and the
13 injury suffered. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105
14 Wash. 2d 778, 780 (1986). Failure to satisfy even one of the elements is fatal to a CPA
15 claim. *Id*. at 794-95.

16    Lenders' motion for summary judgment seeks dismissal of Borrowers' CPA claim
17 arguing that Lenders' conduct complained of by Borrowers does not give rise to a CPA
18 claim. Dkt. 24. In their complaint, Borrowers include allegations of fact in support of
19 their CPA claim against Lenders. Dkt. 2 at 15-16. In response to Lenders' motion
20 seeking summary judgment of the CPA claim, Borrowers state that "[r]eading the
21 complaint in the light most favorable to the Woods, the Woods have sufficiently pled a
22 CPA claim." Dkt. 30 at 15. However, Borrowers fail to submit any evidence in support

of their CPA claim. Accordingly, Lenders' motion seeking summary judgment on Borrowers' CPA claim must be granted and the claim dismissed. *See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n. 14 (stating that "[t]o defeat a summary judgment motion . . . the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings . . . [rather, t]he non-moving party must establish the existence of a genuine factual dispute on the basis of admissible evidence; bare allegations without evidentiary support are insufficient to survive summary judgment") (citing Fed. R. Civ. P. 56(e)).

**C.     Remand**

Because the Court has concluded that Lenders' motion for summary judgment has merit and Borrowers' counterclaims should be dismissed, the Court has dismissed all claims over which it had original jurisdiction and the action will be remanded to the court in which it was originally filed. *See* 28 U.S.C. § 1367(c)(3) (stating that district courts may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction").

**IV. ORDER**

Therefore, it is hereby **ORDERED** as follows:

(1) Lenders' motion for summary judgment (Dkt. 24) is **GRANTED**;

(2) Borrowers' counterclaims against Lenders are **DISMISSED with prejudice**; and

1     (3) This action is **REMANDED** to the Court in which it was originally filed.

2     Dated this 6th day of June, 2012.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge